IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| CONNECTED CONTROLS, INC., | |
| Plaintiff, | CV-23-84-BU-BMM |
| vs. | ORDER |
| DPS ELECTRONICS, INC., | |
| Defendant. | |

**BACKGROUND**

An air brake represents a type of friction brake that uses compressed air to control the pressure applied to brake pads. (Doc. 21 at 3.) Rail cars often use a triple-valve system of air brakes. (*Id.*) Slowing and stopping trains with the system requires depressurization of the system to reapply the brakes. (*Id.*) The Federal Railroad Administration ("FRA") mandates routine testing of air brakes and mandates that certificates of successful tests be carried within the train. (*Id.*) Historical air brake testing occurred manually and resulted in handwritten testing results. (*Id.* at 4.)

Klaus Buchberger co-founded Connected Controls, Inc. ("Connected Controls") in 2012. (Doc. 35 at 2.) Connected Controls, Inc. is a Wisconsin

1

corporation that manufactures digital air-brake testing systems. (Doc. 21 at 2.) DPS Electronics, Inc. ("DPS Electronics") is a Montana corporation that also manufactures digital air-brake testing systems. (*Id.*) A provisional application for patent was filed on September 12, 2016, that named Klaus Buchberger as the inventor. (Doc. 36-1 at 1, 6.) The provisional application sought protection for an invention titled "System and Method for Wireless Digital Air Brake Testing." (*Id.* at 1.) Buchberger filed a non-provisional patent application on September 11, 2017 ("Application 656"). (Doc. 27-3 at 1.) Application 656 sought a patent for "a system and method for wireless digital air brake testing." (*Id.*) Application 656 made eight claims. (*See* Doc. 27-3 at 9.)

The U.S. Patent and Trademark Office ("PTO") issued a notice rejecting all eight claims. (Doc. 27-5 at 2.) The PTO rejected claims 1, 2, 5, and 6 on a finding that an earlier patent anticipated such claims. (*Id.* at 4-9.) The PTO rejected claims 3, 4, 7, and 8 on a finding that the claims would have been obvious to one of ordinary skill in the art based upon earlier issued patents. (*Id.* at 9-11.) Buchberger amended his application in response, but the PTO issued a final rejection on September 6, 2019. (Doc. 27-6 at 2-4; Doc. 27-7 at 1, 10.) Buchberger abandoned Application 656. (Doc. 34 at 8.)

Buchberger filed another patent application on March 8, 2019. ("Application 963"). (Doc. 27-2 at 1.) Application 963 sought a patent for "wireless air brake

2

testing and inspection" and named Buchberger and Steven Novak as inventors. (*Id.*) Application 963 made eleven claims. (*See* Doc. 27-9 at 12-14.) The PTO rejected all claims on September 10, 2019. (Doc. 27-10 at 1.) The examiner determined that an earlier patent had anticipated all claims. (*Id.* at 2.) Buchberger amended his application in response. (Doc. 27-11 at 2-5.) The PTO allowed claims eight through eleven in the amended application. (Doc. 27-12 at 1.) The PTO rejected the remainder of the claims on the basis that the claims represented obvious extensions of prior patents. (*Id.* at 1-2.) The PTO issued patent number US 10,0814,857 B2 ("Patent 857") covering the allowed claims on October 27, 2020. (Doc. 27-2 at 1, 8.)

Buchberger filed another patent application on September 17, 2020. ("Application 315"). (Doc. 27-1 at 1.) Application 315 sought a patent for "wireless air brake testing and inspection" and named Buchberger and Steven Novak as inventors. (*Id.*) Application 315 made seven claims. (*See* Doc. 27-13 at 12-14.) The PTO rejected all claims on March 18, 2022. (Doc. 27-14 at 4.) The examiner determined that Application 315 as written sought double patenting of the first claim. (*Id.*) Buchberger filed a disclaimer to correct the error. (Doc. 34 at 99.) The PTO issued patent number US 11,479,230 B2 ("Patent 230") covering the allowed claims on October 25, 2022. (Doc. 27-1 at 1, 8-9.)

3

Connected Controls has brought this suit against DPS Electronics alleging that DPS Electronics's manufacture and distribution of its digital air brake testing systems infringes upon Patent 857 and Patent 230 owned by Connected Controls. (Doc. 1 at 16-26.) DPS Electronics has moved for summary judgment as to the effective priority date for Connected Controls's asserted patents. (Doc. 25.)

## LEGAL STANDARD

Summary judgment proves appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine material fact dispute requires sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248.

## DISCUSSION

"[F]or a patent's claims to be entitled to an earlier priority date, the patentee must demonstrate that the claims meet the requirements of 35 U.S.C. § 120." *In re NTP, Inc.*, 654 F.3d 1268, 1276 (Fed. Cir. 2011). A district court generally will not presume that claims are entitled to an earlier effective date based on an earlier filed application. *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1305 (Fed. Cir. 2008). Nevertheless, "the patentee bears the burden of coming forward with evidence to prove entitlement to claim priority to an earlier filing date" only "once

4

an accused infringer 'has established a *prima facie* case of invalidity and its burden is met.'" *Speedfit LLC v. Woodway USA, Inc.*, 432 F. Supp. 3d 183, 208 (E.D.N.Y. 2020) (quoting *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1305 (Fed. Cir. 2008)).

A party makes out a *prima facie* case when it "introduces evidence that might lead to a conclusion of invalidity." *Prometheus Lab'ys, Inc. v. Roxane Lab'ys, Inc.*, 805 F.3d 1092, 1102 (Fed. Cir. 2015). The party asserting the invalidity of a patent "must prove [invalidity] by clear and convincing evidence." *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283, 1293 (Fed. Cir. 2015) (citing *Microsoft Corp. v. i4i Ltd. P'ship,* 564 U.S. 91, 95 (2011)). In other words, a party asserting invalidity must proffer *clear and convincing* evidence of invalidity *before* the party relying on validity must submit *any* evidence of validity, including "evidence to prove entitlement to claim priority to an earlier filing date." *PowerOasis* at 1305-1306.

DPS Electronics's motion must fail unless DPS Electronics has proffered clear and convincing evidence that Connected Controls's asserted patents are invalid. *See X2Y Attenuators, LLC v. Int'l Trade Comm'n*, 757 F.3d 1358, 1365 (Fed. Cir. 2014) ("only after [the challenger] established a prima facie case of invalidity would the burden have shifted to [the patentee] to prove priority over the invalidating prior art") (Reyna, J., concurring). DPS Electronics asserts two bases

5

for finding that it has met its burden of making a *prima facie* case of invalidity. *See Prometheus Lab'ys* at 1102. DPS Electronics first contends that a declaration of a DPS Electronics engineer (Doc. 37-1) "establishes a *prima facie* case of invalidity." (Doc. 37 at 4.) Second, DPS Electronics argues that a patent law axiom entitles DPS Electronics to rely on Connected Controls's infringement allegations. *Id.* at 5-6. Neither asserted basis succeeds.

## I. The Burk Declaration fails as a matter of law to establish DPS Electronics's *prima facie* case of invalidity.

DPS Electronics has submitted the sworn declaration ("Burk Declaration") of James Burk, DPS Electronics's "lead engineer for the design and installation of the DPS Yard Air Control wireless train air brake system," or the "YAC system," including the DPS 9000 YAC (Doc. 37-1 at 2.) The Burk Declaration includes a section entitled "YAC System Components" that provides a brief technical description of "the basic DPS YAC system components and how they interact." (*Id.* at 2-4.) The section includes a schematic diagram illustrating the interaction between components. (*Id.* at 3.) The Burk Declaration continues with a section entitled "Timeline of YAC System Development and Installation." (*Id.* at 4-6.) The timeline section provides specific dates for YAC system milestones, including dates for field tests, demonstrations, and DPS 9000 YAC sales, spanning from August 12, 2016, to July 10, 2018. (*Id.*) Burk declares that "the DPS 9000 YAC[]

was known to the public and available for sale as early as the fall of 2017." (*Id.* at 4.)

"When a party claims that its own invention predates, and thereby anticipates, a patent asserted against it, the [. . .] testimony of the inventor of the purported prior art must be corroborated." *Mosaic Brands, Inc. v. Ridge Wallet LLC*, 55 F.4th 1354, 1363 (Fed. Cir. 2022). In *Finnigan Corp.*, a patent assignee appealed the determination of the International Trade Commission ("ITC") that a challenged imported device failed to infringe the asserted patent. *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1356-1357 (Fed. Cir. 1999). The ITC administrative law judge ("ALJ") reasoned in part that certain of the patent claims proved invalid because "clear and convincing" evidence showed that those claims were anticipated by prior use. *Id.* at 1361.

The ALJ found that a technical article had disclosed the subject matter of the claims. *Id.* at 1360-1361. The article author testified regarding prior use of the claimed invention. *Id.* at 1361. The ALJ then relied upon the article author's testimony to determine the question of invalidity. *Id.* at 1360-1361. The ALJ noted that the credibility of the author did "not appear to be open to any serious question" because he was not an interested party in the controversy and that the author's testimony proved not inconsistent with his technical article. *Id.* at 1361. No other

testamentary or documentary evidence before the ALJ corroborated the article author's testimony as to prior use. *See id.*

The Federal Circuit reversed the ITC's determination that the claims proved invalid because they were anticipated by prior use. *Id.* at 1365. The reviewing court considered the sufficiency of uncorroborated testimony to establish invalidity in light of patents' presumptive validity and the fact that invalidating "activities are normally documented by tangible evidence such as devices, schematics, or other materials that typically accompany the inventive process." *Id.* at 1365-1367. The Federal Circuit concluded that uncorroborated testimonial evidence "alone cannot surmount the hurdle that the clear and convincing evidence standard imposes in proving patent invalidity" and proves "insufficient *as a matter of law* to establish invalidity of the patent." *Id.* at 1370 (emphasis added).

*Finnigan Corp.* controls in this case. DPS Electronics has supplied no additional evidence, other than the Burk Declaration, to establish a *prima facie* invalidity case. *See generally* (Docs. 26, 27, and 37, and attachments); *see also Finnigan Corp.* at 1370; *compare Nobel Biocare Servs. AG v. Instradent USA, Inc.*, 903 F.3d 1365, 1379 (Fed. Cir. 2018), *as amended* (Sept. 20, 2018) (determining that a situation "involving corroboration of a document's date of public accessibility and the testimony of multiple witnesses[] is factually distinguishable" from *Finnigan Corp.*). The schematic diagram of the DPS YAC

system included in the Burk Declaration cannot corroborate the Burk Declaration of which it is a component part. (Doc. 37 at 3.) The schematic diagram, moreover, appears in the Burk Declaration undated and otherwise lacking indicia that may, apart from the Burk Declaration, corroborate Burk's sworn assertions. (*Id.*)

The reasoning of *Finnigan Corp.* that extensive documentation normally accompanies invalidating activities remains sound, especially in an increasingly computerized age. *Finnigan Corp.* further notes the particularly strong need for corroboration of sole testimony when, as in the case of DPS employee Mr. Burk, the witness possesses a financial or professional interest in the finding of invalidity. 180 F.3d at 1368-1369 ("it is not surprising that the cases have held that testimony concerning a witness's *own* anticipatory activities must be corroborated") (emphasis original). The Burk Declaration fails "as a matter of law" to satisfy DPS Electronics's burden to proffer clear and convincing evidence of invalidity because the Burk Declaration remains uncorroborated by other evidence as to DPS Electronics's purported invalidating activities. *Id.* at 1370.

**II.    *Evans Cooling* and *Vanmoor* do not control where the question of an asserted patent's effective date remains unresolved.**

Aside from the Burk Declaration, DPS Electronics contends that Connected Controls's allegations that DPS Electronics products infringed Connected Controls's patents suffice to satisfy DPS Electronics's burden to establish a *prima*

*facie* case of invalidity. (Doc. 37 at 5-6.) An "axiom of patent law" provides that a product would anticipate a patent before the patent's effective date if that same product would infringe a patent after the patent's effective date. *Upsher-Smith Labs., Inc. v. Pamlab, L.L.C.*, 412 F.3d 1319, 1322 (Fed. Cir. 2005). In DPS Electronics's words, it "stands to reason that, where a patent holder accuses a product of infringement, and that product was in public use or on sale before the effective date of the patent, the patent is invalid." (Doc. 37 at 5.) Separately, DPS Electronics could invoke Connected Controls's infringement assertions to corroborate the Burk Declaration and by that route seek to meet the clear and convincing burden. *See Zenith Elecs. Corp. v. PDI Commc'n Sys., Inc.*, 522 F.3d 1348, 1357 (Fed. Cir. 2008) (*Finnigan Corp.* does not control where a witness's "statements are corroborated by testimony from other witnesses, documentary evidence, *and [the patentee's] own admissions*) (emphasis added).

      Precedent supports DPS Electronics's understanding of the axiom. In *Evans Cooling Sys., Inc. v. Gen. Motors Corp.*, the patentee's contention that the device that the defendant put on sale infringed the asserted patent constituted "the entire basis of the [patentee's] lawsuit." 125 F.3d 1448, 1451 (Fed. Cir. 1997). The Federal Circuit determined that the defendant had met its burden of proving the asserted patent's invalidity by clear and convincing evidence by force of the patentee's allegations that the defendant's device infringed. *Id.* Likewise, in

10

*Vanmoor v. Wal-Mart Stores, Inc.*, the patentee's allegation that the accused devices infringed the asserted patent "satisfied [. . . the defendant's] burden of proving that the [devices . . .] anticipated the [asserted] patent" where "the entire basis of the patent infringement claim [was] the patentee's[] contention that the accused [devices] infringe[d] the [asserted] patent." 201 F.3d 1363, 1366 (Fed. Cir. 2000).

*Evans Cooling* and *Vanmoor* do not apply to the issue raised by DPS Electronics's motion. The logic of *Evans Cooling* / *Vanmoor* depends on the existence of a set effective date. The Federal Circuit in *Evans Cooling* affirmed the district court's grant of summary judgment to the defendant of invalidity in part "[b]ecause there were no materially disputed questions of fact regarding whether the patented invention was offered for sale more than one year *prior to the critical date*." 125 F.3d at 1449 (emphasis added); *see id.* at 1452 ("June 13, 1991—nearly a month prior to the critical date"). *Vanmoor* also assumes that the invalidating sales occurred prior to the asserted patent's critical date. *See* 201 F.3d at 1366 ("[the patentee] makes no argument that the pre-critical date sales were for a non-commercial purpose"). DPS Electronics's motion seeks to pin down the applicable effective date in this case. *See* (Doc. 25.) The effective date of Connected Controls's asserted patents remains, as yet, uncertain.

11

The *Evans Cooling / Vanmoor* rule only operates to support the party invoking the rule if the alleged infringement conduct happened *before* the challenged patent's effective date. If the alleged infringement conduct occurred *after* the patent's effective date, the conduct could infringe but could not anticipate the patent. The axiom's mirror effect would be nullified when the alleged infringement conduct remains on the "infringement side" of the looking glass. The reasoning of *Evans Cooling / Vanmoor* becomes meaningless in such a case. *See, e.g., Quantum Loyalty Sys., Inc. v. TPG Rewards*, 2011 WL 2015221, at *5 (D. Del. May 24, 2011) (concluding that "*Evans Cooling* and *Vanmoor* have no application" where a party lodges an accusation of infringement against a product that was released *after* the challenged patent's critical date).

The *Evans Cooling / Vanmoor* route through the requirement to present a *prima facie* invalidity case challenging a patent remains closed until after that patent's effective date has been established. *See Top Brand LLC v. Cozy Comfort Co. LLC*, 688 F. Supp. 3d 924, 938 (D. Ariz. 2023) ("courts are *very* reluctant to extend the *Vanmoor-Evans Cooling* principles to anything other than the exact factual scenario presented in those cases") (collecting cases) (emphasis original). Necessarily, a party cannot invoke the *Evans Cooling / Vanmoor* rule to support that party's argument as to when a patent's effective date lies. DPS Electronics's

attempt to invoke *Evans Cooling* / *Vanmoor* in this manner fails. DPS Electronics fails to make a *prima facie* case of invalidity. *See Prometheus Lab'ys* at 1102.

## ORDER

Accordingly, **IT IS ORDERED** that:

DPS Electronics's Motion for Summary Determination of Priority Date of Asserted Patents (Doc. 25) is **DENIED**.

**DATED** this 2nd day of July, 2024.

Brian Morris, Chief District Judge
United States District Court